IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 06-008-KAJ |
| RICHARD REID, | : |
| Defendant. | : |

**RESPONSE TO DEFENDANT'S PRE-TRIAL
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Pre-Trial Motion to Suppress Evidence and Statements (hereinafter, "Motion to Suppress"), as follows:

1. In his motion, the Defendant argues for the suppression both of evidence seized during the search of 3 Butternut Court, Apartment D, Claymont, Delaware (hereinafter, the "Residence"), on October 5, 2005, and also of statements made by the Defendant to the police following his arrest on that same date. The Defendant advances four arguments as to why the evidence seized during the search of the Residence, which was conducted pursuant to a Search Warrant, a copy of which is attached hereto as Exhibit A ("Exh. A"), should be suppressed. First, the Defendant argues that the Search Warrant was not based on probable cause. This argument is addressed in paragraphs 3 through 7, below. Second, the Defendant argues that the affidavit submitted in support of the Search Warrant application was obtained in violation of the rule of *Franks v. Delaware*, 438 U.S. 154 (1978), an argument addressed in paragraphs 8 through 13, below. Third, the Defendant argues that statements by him included in the affidavit were

obtained in violation of his constitutional rights and, therefore, cannot be used to establish probable cause. This argument is addressed in paragraphs 14 through 16, below. Finally, the Defendant argues that the evidence seized from the Residence was obtained as a result of a prior, warrantless search thereof and, as a result, must be suppressed. This argument is addressed in paragraphs 17 through 19, below. With respect to the statements he made to the police, the Defendant argues that they were obtained in violation of his Fifth Amendment rights and without the knowing, intelligent, and voluntary waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). This final argument is addressed in paragraph 20, below. For the reasons set forth below, the government does not believe that any hearing is necessary on the various Fourth Amendment arguments raised by the Defendant, as those issues can be determined on the record now before the Court, but does agree that the Defendant is entitled to an evidentiary hearing on his Fifth Amendment argument.

2. The Defendant's particular contentions regarding the Search Warrant should be considered in light of the affidavit as a whole, which may be summarized as follows:

> Detectives Tower and Iglio, the affiants, had experience in drug investigations, drug-related arrests, and authoring and executing search warrants. Exh. A, ¶¶ 1-2. In July 2005, Detective Tower was informed by a past proven reliable confidential informant that a man known as "Baz" was trafficking in cocaine in New Castle County, Delaware. Exh. A, ¶ 3. Using this same confidential informant, the police made controlled purchases of cocaine from "Baz" in July and September 2005. Exh. A, ¶¶ 4-5. The car used by "Baz" during the first controlled purchase, which was parked nearby during the second controlled purchase, was registered to a person named Richard Reid. Exh. A, ¶¶ 4-5. In the course of the second controlled purchase, the police made a visual identification of "Baz" as Richard Reid, based on comparison with Reid's Delaware driver's license photo. Exh. A, ¶ 5. The confidential informant told the police that "Baz" lived at 3 Butternut Court, Claymont, Delaware, and the police observed Richard Reid's car outside that address on several occasions. Exh. A, ¶ 4. A NCIC search revealed that Richard Reid had prior drug-related arrests and felony convictions. Exh. A, ¶ 5. The police obtained a search warrant for Reid's car and person, which they executed on October 5,

2005. Exh. A, ¶ 6. During their search of Reid's person, the police found two glassine bags containing an off-white substance, which field tested positive for cocaine. Exh. A, ¶ 6. Prior to his detention, Reid was seen coming from area of 3 Butternut Court. Exh. A, ¶ 6. Reid told the police he was coming from 3 Butternut Court, Apartment 3-E, but was holding keys to Apartment 3-D. Exh. A, ¶ 6. The confidential informant had previously told the police that Reid lived in Apartment 3-D. Exh. A, ¶ 6. Reid later admitted that his girlfriend lived in Apartment 3-D. Exh. A, ¶ 6. Photographs of Reid were observed in Apartment 3-D, and the registered renter of the apartment was a family member of Reid's girlfriend, Janice Richardson. Exh. A, ¶ 6. The affiants recited the various items — business records, cash, weapons, electronic communications devices, and drug paraphernalia – they knew drug dealers often maintained and possessed. Exh. A, ¶¶ 8-11.

3. A review of the Search Warrant affidavit demonstrates that sufficient information was presented to the Justice of the Peace for him to make the probable cause determination. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is determined by a "totality-of-the-circumstances analysis," under which the issuing judge must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. This Court reviews the issuing judge's determinations to see whether the judge had a substantial basis for making them. *Id.* at 238-39; *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir.1993). Therefore, "a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *Id.* The supporting affidavit to a search warrant application "must be read in its entirety and in a common sense and nontechnical manner." *Id.* at 1206. In making the substantial basis determination, "the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'" *Id.* at 1055. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (alteration in original) (quoting *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)). *See United States v. Leatherbury*, Criminal Action No. 03-52-

GMS, 2004 WL 286945, at *2 (D. Del. Feb. 13, 2004) ("The court must ask whether the circumstances set forth in the four corners of the affidavit indicate a fair probability that evidence of a crime would be found at the target location").

4. In this case, the Search Warrant affidavit established probable cause to believe that the Defendant had participated in the delivery of a Narcotic Schedule II Controlled Substance, namely cocaine, in violation of 16 Del. Code § 4751, and that contraband or evidence of this crime would be found in the Residence, the premises to be searched pursuant to the Search Warrant.

5. The Defendant does not contend that the affidavit fails to allege that he committed a crime – the affidavit details how the police made two controlled purchases of cocaine from the Defendant via a confidential informant, and, during the second controlled purchase, were able to make a visual identification of the Defendant. Exh. A, ¶¶ 4-5. Nor does the Defendant specifically take issue with the affiant detectives' statements, based on their training and experience, regarding the propensity of drug dealers to maintain items related to their drug trafficking activity, including business records and/or transaction notations, large amounts of United States currency, guns and/or weapons, electronic communication devices, and drug paraphernalia, and their resultant probable cause belief that such items, as well as cocaine or other controlled substances, would be found in the Defendant's residence. Exh. A, ¶¶ 8-12. Rather, the Defendant's argument appears to be that the affidavit did not establish a sufficient connection between the Defendant and the Residence – in other words, that the police lacked probable cause to believe that he lived there. *See* Motion to Suppress, ¶¶ 4 ("the affidavit did not establish probable cause to believe that evidence relating to drug trafficking activity would be

found at this location") and 7 (arguing that the police were using certain evidence to "substantiate their claims that Mr. Reid lived in apartment D at 3 Butternut Ct.").

6. The police set forth multiple factual bases for the Justice of the Peace to find probable cause to believe that the Defendant lived in the Residence. First, the confidential informant – who had been proven reliable in the past (Exh. A, ¶ 3), and had provided reliable information about the Defendant's drug dealing (Exh. A, ¶ 3) – informed the police that the Defendant lived in the Residence. Exh. A, ¶¶ 4, 6. Second, during their search of the Defendant's person pursuant to a search warrant[1] on the morning of October 5, 2005, the police found keys to the Residence. Exh. A, ¶ 6. These two pieces of information standing alone would have provided sufficient probable cause to believe that the Defendant lived in the Residence. The affidavit included even more information, however, including that surveillance revealed that the car registered to the Defendant, within which he had sold cocaine to the confidential informant during the first controlled purchase (Exh. A, ¶ 4), was parked in front of the Residence several times, and the Defendant was observed exiting from the area of the Residence prior to his being detained, arrested, and searched by the police on October 5, 2005. Exh. A, ¶ 6. The Defendant does not challenge the admissibility of any of the aforementioned evidence. Therefore, without even considering the additional information in the affidavit related to where the Defendant lived that he does challenge (*i.e.*, statements made by the Defendant and evidence seen during a prior, warrantless search of the Residence), arguments addressed *infra* in paragraphs 14 through 19, there was already ample probable cause to believe that the Defendant

---

[1]This search was conducted pursuant to a search warrant authorizing the search of the Defendant's person and car. The Defendant does not contest the sufficiency of this prior warrant in his Motion to Suppress.

lived in the Residence. Because the content within the "four corners" of the affidavit is dispositive on the question of whether a substantial basis existed for issuing the Search Warrant – here, establishing that it did – an evidentiary hearing is not required on the Defendant's first argument.

7.  Even were the Court to determine that there was no substantial basis for the probable cause determination, suppression of the evidence seized in the search of the Residence is proper only if the Court were to conclude that the investigating officers could not have had an objectively reasonable belief in the existence of probable cause. *See United States v. Leon*, 468 U.S. 897, 922-25 (1984); *United States v. Williams*, 3 F.3d 69, 73-74 (3d Cir. 1993); *see also United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001) ("The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."). The investigating officers were justified in relying upon the Justice of the Peace's conclusion that probable cause existed, since the affidavit was not just a series of conclusory statements that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Williams*, 3 F.3d at 74 n.4 (internal citations and quotation marks omitted), nor, as discussed *infra* at paragraphs 8 through 13, was it based on a deliberately or recklessly false affidavit.[2] This point also does not require an evidentiary hearing.

8.  The Defendant's second argument in support of suppression is that the affidavit was obtained in violation of the rule of *Franks v. Delaware*, 438 U.S. 154 (1978). Because the

---

[2] Of the four scenarios in which the *Leon* "good faith exception" does not apply, these are the only two arguably implicated by the Defendant's Motion to Suppress.

Defendant has failed to make the required "substantial preliminary showing" that the Search Warrant affidavit contained statements by the affiants (*i.e.*, Detectives Tower and Iglio) that were deliberately false or made in reckless disregard for the truth, and has also failed to demonstrate that the allegedly false statements were material, he is not entitled to an evidentiary hearing pursuant to *Franks*. *Id.* at 155-56.

    9.    In *Franks*, the Supreme Court held:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. [...] Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant.

*Id.* Additionally, the allegedly false statements must be material to the finding of probable cause. *See Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). To assess the materiality of an affirmative misrepresentation, first "the court is required to excise the false statement from the affidavit," *United States v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006), and then it must "determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789.

    10.    Thus, an evidentiary hearing is not warranted with regard to the alleged inaccuracy of the information contained in the affidavit unless the Defendant first makes a substantial preliminary showing that the affiants deliberately or recklessly included a false statement in the affidavit, and that the false statement is necessary to the finding of probable

cause. *See United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993) (citing *Franks*, 438 U.S. at 155-56).[3] An assertion is made with reckless disregard for the truth when, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. *See Wilson*, 212 F.3d at 788. It is the Defendant's burden to establish "the allegation of perjury or reckless disregard . . . by a preponderance of the evidence." *Franks*, 438 U.S. at 156.

11.     The Defendant's Motion to Suppress is insufficient to carry his heavy burden. Although the Defendant contends that "the warrant in this case falsely asserted that Mr. Reid had a narcotics arrest and four felony convictions in Virginia," and that the "officers were at the very least reckless in including this false information in the warrant," Motion to Suppress, ¶ 6, the Defendant's allegation is not accompanied by the requisite offer of proof. *See Yusuf*, 461 F.3d at 383 n.8 (noting that to make the required preliminary showing for a *Franks* hearing, "the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses") (internal citations omitted). For this reason alone, further hearing on the *Franks* issue is not indicated.

12.     Furthermore, the pertinent question is not whether the Defendant had narcotics arrests and four felony convictions in Virginia, but, rather, whether the NCIC (National Crime Information Center) inquiry performed by the officers indicated that he did. The government

---

[3] The requirement of a truthful basis for the issuance of a warrant, as the Supreme Court has explained, "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and other information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *See United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993).

expects to produce evidence establishing that an NCIC inquiry indicated that a person with the same name and personal identifying information (*e.g.*, date of birth and FBI number) as the Defendant had such a record, result that the officers reasonably and justifiably relied upon in drafting the affidavit, and that subsequent investigation revealed that it was a different person.

13.   In any event, the Defendant fails to allege that the "false information" he claims was included in the affidavit is material, contending only that "[w]hen such false material is set aside, there is even less basis upon which to establish probable cause." Motion to Suppress, ¶ 6. The Defendant's assertion is not borne out by an examination of the affidavit. As noted above, the affidavit contained, *inter alia*, detailed accounts of two recent controlled purchases of cocaine from the Defendant, as well as the fact that the Defendant had two glassine baggies containing cocaine in his pocket when he was detained and searched. This information about the Defendant's ongoing drug trafficking activity, combined with the affiant detectives' training- and experience-based statements, provided sufficient probable cause for the issuance of the Search Warrant. Because excision of the allegedly false information about the Defendant's criminal record from the affidavit, pursuant to the procedure set forth by the Third Circuit in *Wilson* and *Yusuf*, has no material effect on the probable cause determination, the evidence seized pursuant to the Search Warrant should not be suppressed on *Franks* grounds and no hearing is necessary on this issue.

14.   The Defendant's third argument is that statements by him that were included in the affidavit "were taken in violation of [the Defendant's] constitutional rights and therefore . . . cannot be used to establish probable cause to support the search in this case." Motion to

Suppress, ¶ 6. The Defendant offers no support for this bald allegation,[4] and the government intends to adduce testimony at the upcoming hearing on the Motion to Suppress demonstrating that the statements were obtained in compliance with all constitutional requirements. Specifically, the statements were obtained after the Defendant was advised of and waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). But even assuming, *arguendo*, that the Defendant's statements were not properly included in the affidavit, the evidence gained via the search should be admitted pursuant to the "independent source" doctrine because the affidavit was more than sufficient to establish probable cause absent the statements.

15.   As explained by the Third Circuit, the "long-standing independent source doctrine . . . serves as an exception to the exclusionary rule and permits the introduction of illegally obtained evidence where the police had an independent source for the discovery of the evidence." *United States v. Perez*, 280 F.3d 318, 338 (3d Cir. 2002). The Supreme Court articulated the underlying reasoning as follows:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others.

*Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). Accordingly, when officers "unlawfully enter an area protected by the Fourth Amendment and learn of facts $x$ and $y$ but then later learn of facts $x$ and $y$ independently and lawfully, [they] can have admitted into evidence

---

[4]The independent issue of the admissibility of those statements, as opposed to their use in the Search Warrant affidavit, is addressed *infra* at paragraph 20.

their knowledge concerning facts $x$ and $y$." *United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992) (citing *Murray v. United States*, 487 U.S. 533, 538 (1988)).[5]

16.     As noted above, all of the statements by the Defendant included in the affidavit were obtained after he was Mirandized. Specifically, the affidavit included the Defendant's statements that he was "advised he was coming from apt 3-e" after he was detained; he "later admit[ted] that his girlfriend lives at 3-d Butternut Ct."; and he "advised [that Lawrence Jones, the registered renter of the Residence] was a family member of his girlfriend, Janice Richardson who lives at that apartment." Exh. A, ¶ 6. These statements by the Defendant were all related to where he lived. However, as noted *supra* in paragraph 6, the affidavit included information from other sources – including the past proven reliable confidential informant and surveillance during the course of the investigation – indicating that the Defendant lived in the Residence, as did the fact that the Defendant was holding keys for the Residence at the time he was arrested. Thus, because the affiants had an independent source for their knowledge on this point, even if statements by the Defendant were improperly included in the affidavit, the evidence discovered during the warranted search should not be suppressed. Again, no hearing is necessary for the Court to resolve this issue.[6]

17.     Finally, the Defendant argues that the evidence seized from the Residence was obtained as a result of a prior, warrantless search thereof and, as a result, must be suppressed. As

---

[5] The Supreme Court has made clear that the "independent source" doctrine also applies when considering alleged Fifth Amendment violations. *See Nix v. Williams*, 467 U.S. 431, 442 n.3 (1984) (observing that "[a]pplication of the independent source doctrine in the Fifth Amendment context was reaffirmed in *Kastigar v. United States*, 406 U.S. 441, 460-461 [], (1972)").

[6] As discussed *infra* at paragraphs 1 and 20, the government does not contest that the Defendant is entitled to an evidentiary hearing on the separate and independent issue of the admissibility of his statements to the police, as opposed to their use in the Search Warrant affidavit.

a preliminary matter, the government maintains that the initial entry into the Residence was a lawful "protective sweep" authorized by *Maryland v. Buie*, 494 U.S. 325 (1990), and, as a result, could not possibly have tainted the subsequent Search Warrant. But even assuming, *arguendo*, that the initial entry was invalid, the evidence found in the Residence is admissible pursuant to the aforementioned "independent source" doctrine. In the above-cited *Perez* and *Herrold* cases, the Third Circuit had occasion to consider situations analogous to the one the Defendant contends is presented here -- the use of information gained during an invalid warrantless search in a subsequent affidavit seeking a search warrant for the same premises. In each case, the Third Circuit determined that, pursuant to the "independent source" doctrine, the resultant search warrant was valid and the fruits of the search were not tainted. *See Perez*, 280 F.3d at 341; *Herrold*, 962 F.2d at 1144. For the reasons that follow, the same result should obtain in the present action.

18.     When applying the "independent source" doctrine in this context, the determinative question for the Court is whether "the affidavit for the warrant in question contained sufficient probable cause to justify the search apart from information the officers learned during the initial [warrantless] entry." *Perez*, 280 F.3d at 339. In addressing this issue, the Court is to:

> ask[] two questions: (1) whether a neutral justice would have issued the search warrant even if not presented with information that had been obtained during an unlawful search and (2) whether the first search prompted the officers to obtain the search warrant. If the answers to these questions are yes and no respectively . . . then the evidence seized during the warranted search, even if already discovered in the original entry, is admissible. Otherwise the police would indeed be in a worse position than they would have been in had they not violated [the defendant's] Fourth Amendment rights.

*Herrold*, 962 F.2d at 1144.

19.     In the present case, the only information included in the Search Warrant affidavit that was obtained during the protective sweep was that "[t]here were pictures of Mr[.] Reid in that residence as well." Exh. A, ¶ 6. Given the other probative information in the affidavit tending to establish that the Defendant lived in the Residence, it cannot reasonably be maintained that this statement would have been determinative to the decision by the Justice of the Peace to issue the Search Warrant. Accordingly, the first *Herrold* question – "whether a neutral justice would have issued the search warrant even if not presented with information that had been obtained during an unlawful search" – must be answered in the affirmative. Furthermore, in light of the extant evidence indicating that the Defendant lived in the Residence, and the affidavit detectives' belief, based on their training and experience, that contraband or evidence of a crime would be found in his home, it cannot be said in response to the second *Herrold* question that "the first search prompted the officers to obtain the search warrant." The information possessed by the officers "was sufficient to establish probable cause to seek a search warrant for the apartment irrespective and independent of those items discovered within the apartment in connection with the tainted police entry." *Perez*, 280 F.3d at 341. Here, therefore, as in *Perez*, "a valid search warrant issued, the fruit of that search was not tainted, and thus there was no violation of [the Defendant's] Fourth Amendment rights." *Id.* As with the all of the other Fourth Amendment arguments raised by the Defendant in his Motion to Suppress, no hearing is necessary for the Court to make a determination on this point.

20.     Lastly, the Defendant argues for suppression of statements he made to the police following the warranted search of his person and vehicle, statements he claims were obtained in violation of his Fifth Amendment rights and the requirements of *Miranda v. Arizona*, 384 U.S.

436 (1966). Pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), a defendant objecting to the admissibility of a confession has a "constitutional right at some stage in the proceedings . . . to have a fair hearing and a reliable determination on the issue of voluntariness," *id.*, at 376-77, "in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Id.* at 380. The government intends to demonstrate at the upcoming hearing on the Defendant's Motion to Suppress that the Defendant was advised of his *Miranda* rights prior to making a statement to the police, that his waiver of those rights was knowing and intelligent, and that he made his statements to the police voluntarily. Accordingly, the government respectfully requests that the Court reserve judgment on the issue of the admissibility of the Defendant's statements until following the hearing.

**WHEREFORE**, the United States requests that the Court deny the Defendant's Motion to Suppress Evidence and Statements, to the extent that it concerns the admissibility of physical evidence, and reserve judgment on the admissibility of the Defendant's statements until after the November 1, 2006 hearing regarding the pending motion.

Respectfully submitted.

COLM F. CONNOLLY
UNITED STATES ATTORNEY

BY: /s/ Sophie E. Bryan
David L. Hall
Sophie E. Bryan
Assistant United States Attorneys

Dated: October 30, 2006

32-05-126537

IN THE MATTER OF:
State of Delaware V. Richard D. Reid (b/m 11-22-66)
3 Butternut Ct, Apt D, Claymont DE 19703
And all curtilage therein

} IN THE JUSTICE OF THE PEACE
} COURT #20
} STATE OF DELAWARE
} SEARCH WARRANT
} Application and Affidavit

THE STATE OF DELAWARE TO: **Detective M. Tower (2460) and Detective M. Iglio (2532) of the New Castle County Police Department with** the assistance of any police officer or constable or any other necessary or proper person or persons or assistance.

GREETINGS:

Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely, **Cocaine, any other controlled substances, Scales and packaging equipment, Drug paraphernalia, United States Currency (Money), Business records indicative of drug transactions and U.S.C. transactions, Electronic communication devices, any Guns, ammunition and/or weapons, Photographs of U.S.C. and/or illegal drug use;** used or intended to be used for **the packaging, sale and/or consumption controlled substances** is being concealed on the **Person(s) or in the Premise** described in the annexed affidavit and application or complaint; and that search of the premises in the **daytime** is necessary in order to prevent the escape or removal of the person or thing to be searched for:

NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the date hereof to search the above-named person, persons, house, conveyance or place for the property specified in the annexed affidavit and application, and to search any occupant or occupants found in the house, place, or conveyance above-named for such property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched is not a dwelling house, and, if the property, papers, articles or things, or any part thereof, be found there, to seize it, giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they are present, or, if they are not present, in the presence of a least one witness, and to return this warrant, accompanied by the written inventory, to me forthwith.

DATED the \_\_5\_\_ day of \_\_October\_\_ A.D. 2005

_____
Judge/Justice of the Peace

JP Ct 20
Name/Title (Print)

Terry L. Smith

32-05-126537
IN THE MATTER OF:
State of Delaware V. Richard D. Reid (b/m 11-22-66)
3 Butternut Ct, Apt D, Claymont DE 19703
And all curtilage therein

} IN THE JUSTICE OF THE PEACE
} COURT #20
} STATE OF DELAWARE
} SEARCH WARRANT
} Application and Affidavit

| | | |
|---|---|---|
| STATE OF DELAWARE<br>COUNTY OF NEW CASTLE | DATE OF APPLICATION<br>Wednesday  10/05/05 | COMPLAINT NO.<br>32-05-126537- |

NAME(S) OF AFFIANT(S):
**Detective Matthew Tower (2460)**         OF   New Castle County Police Department

**Detective Mike Iglio   (2532)**              OF   New Castle County Police Department

personally appeared before me, and being duly sworn (affirmed) according to law, depose(s) and say(s) that there is probable cause to believe that certain property is evidence of, or the fruit of a crime, or is contraband, or is unlawfully possessed or is otherwise subject to seizure, and is located at particular premises or places or in the possession of a particular person(s) as described below:

Identify item(s) to be searched for and seized:
**Cocaine, any other controlled substances, Scales and packaging equipment, Drug paraphernalia, United States Currency (Money), Business records indicative of drug transactions and U.S.C. transactions, Electronic communication devices, any Guns, ammunition and/or weapons, Photographs of U.S.C. and/or illegal drug use;**

Specific description of premises and/or place(s) and/or vehicle(s) and/or person(s) to be searched:
1. .The residence at 3 Butternut Ct, Apt D, Claymont DE 19703

Name of owner(s), occupant(s), or possessor(s), or premises and/or place(s) to be searched:
**Occupant:** Reid, Richard D. (b/m 11-22-66)  (Delaware license # 1371737)

Violation of (describe conduct or specify statute): **TITLE 16  CHAPTER 47.  (Delivery of a Narcotic Schedule II Controlled Substance)**
PROBABLE CAUSE BELIEF IS BASED ON THE FACTS AND CIRCUMSTANCES SET FORTH IN THE HEREIN ATTACHED PROBABLE CAUSE SHEET CONSISTING OF **3** PAGES.

_____  OF  ___NCCPD___  __2460__
(SIGNATURE OF AFFIANT)        (AGENCY/DEPARTMENT)   (IBM)

_Det M. Iglu_____  OF  ___NCCPD___  __2532__
(SIGNATURE OF AFFIANT)        (AGENCY/DEPARTMENT)   (IBM)

SWORN AND SUBSCRIBED BEFORE ME, THIS 5th DAY OF October 2005

_____         JP Ct 20
(SIGNATURE OF ISSUING AUTHORITY)         (COURT)

0071

32-05-126537

**PAGE 2 OF 5 PAGES**

TO LAW ENFORCEMENT OFFICER(S): WHEREAS, facts have been sworn to or affirmed before me, by written affidavit(s) attached hereto, from which I have found probable cause, I do authorize you to search the herein described premises and/or place(s) and/or vehicle(s) and/or person(s) and to seize, secure, inventory and make return in accordance to the DELAWARE Code, the herein described items.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(√) This warrant should be served no later than 10:00 A.M./(P.M.) October 15, 2005, and shall be executed during the daytime hours 0600-2200 hrs. ISSUED UNDER MY HAND THIS 5th day of October, 2005, at 1:00 A.M./P.M. o'clock.
(ISSUE TIME MUST BE STATED)

_____
Signature of Issuing Authority

32-05-126537

**PAGE 3 OF 5 PAGES**

| STATE OF DELAWARE | } | SEARCH WARRANT |
| COUNTY OF NEW CASTLE | } | APPLICATION AND AFFIDAVIT |

********************************************************************************

PROBABLE CAUSE SHEET

DATE OF APPLICATION: <u>10/05/05</u>    COMPLAINT NO.: <u>32-05-126537</u>

********************************************************************************

1. Your affiant #1, Det. Matthew Tower #2460 is a sworn police officer with the New Castle County Police Department and has so been employed since August 1994. Your affiant #1 is currently assigned to Community crime intervention unit of Patrol Division. Your affiant #1 has received training in narcotics and non-narcotics investigations from the New Castle County Police Academy. Your affiant #1 has also received training in drug investigations from the Drug Enforcement Administration (DEA), Maryland State Police Dept., New York State Police Dept and Northeast Counter-drug Training Center. Your affiant #1 has made numerous drug related arrests. Your affiant #1 has also authored and assisted on numerous search warrant executions.

2. Your affiant #2, Det. M. Iglio #2532 is a sworn police officer with the New Castle County Police Department and has so been employed since August 1998. Your affiant #2 is currently assigned to Community crime intervention unit of Patrol Division. Your affiant #2 has received training in narcotics and non-narcotics investigations from the New Castle County Police Academy. Your affiant #2 has also received training in drug investigations from the Drug Enforcement Administration (DEA), and the New Castle County Police Academy. Your affiant #2 has made numerous drug related arrests. Your affiant #2 has also authored and assisted on numerous search warrant executions.

3. During July 2005 Your Affiant #1 and Det Melvin spoke to a past proven reliable confidential informant (CS-1) who advised that there was a black male known as "Baz" who was selling cocaine throughout New Castle County DE.

4. During July 2005 this CS-1 agreed to make a controlled purchase of cocaine from this subject Baz. This controlled purchase took place in the area of Claymont De in July 2005. The CS-1 was searched prior to and immediately after said purchase without result. Your affiant #1 and Det Melvin observed the CS-1 approach a vehicle and get into this vehicle. (Delaware tag PC80943) A moment later said CS-1 re-emerged from this vehicle and respond to an agreed upon meeting point. CS-1 advised that the purchase of cocaine went as planned with 'Baz' and produced a small amount of off-white substance that field tested positive for cocaine. This substance was secured and logged into evidence at NCCPD HQ. (See 32-05-088638)

The registered owner of this vehicle listed above is one Richard Reid (b/m 11-22-66). Said CS-1 advised that this subject lives in an apartment building at 3 Butternut Ct, Claymont DE 19703. Surveillance conducted in this case would reveal this vehicle parked in front of that location several times.

32-05-126537

5. During the week of 09/25/05 your affiant #1 made contact with the CS-1 and CS-1 agreed to again make a controlled purchase from this subject "Baz" of cocaine. This controlled purchase took place in the area of Claymont De. The CS-1 was searched prior to and immediately after said purchase without result. Your affiant #1 observed the subject known as "Baz" and CS-1 make an apparent hand to hand transaction. A moment later the CS-1 responded directly to the agreed upon meeting place and advised said purchase of cocaine had went as planned with subject "Baz". CS-1 turned over a small amount of off white substance that field tested positive for cocaine. This substance was field tested positive for cocaine and logged into evidence at NCCPD HQ. (32-05-126537)

During this controlled buy writer was able to see the black male subject 'Baz'. This subject appeared consistent with the Delaware driver's license photo of the registered owner of this vehicle (Delaware tag PC80943), one Richard Reid (b/m 11-22-66). The above listed vehicle was parked nearby when this second controlled buy took place.

NCIC check on **Richard D. Reid (b/m 11-22-66)** revealed that he has narcotics arrests in the states of New York and Virginia. This subject has four felony convictions in Virginia related to these arrests.

6. Based on this investigation a search warrant was obtained for the subject **Richard Reid (b/m 11-22-66)** and his vehicle De Tag PC80943, a black Dodge Durango. This search warrant was obtained at JP Court 20 on 09-27-05. This warrant was executed on 10-05-05 at approximately 1005 hrs. At that time this subject Richard Reid was detained and he was searched and found to have 0.8 grams of off white substance in his front left pants pocket. This was packaged in two individual glassine baggies. This substance field tested positive for cocaine. (Sirchie #13.)
Reid was seen exiting the area of 3 Butternut Ct just prior to being detained. He later advised he was coming from apt 3-e. Subject Reid had keys on his person for apt 3-d. Your affiant #1 had previously been advised from CS-1 that subject Richard Reid lived at Apt 3-d.
Subject Reid would later admit his girlfriend lives at 3-d Butternut Ct. There were pictures of Mr Reid in that residence as well. Your affiant knows the registered renter of Apt 3-D is a subject Lawrence Jones, who Mr Reid advised was a family member of his girlfriend, Janice Richardson who lives at that apartment..

7. Cocaine is a Narcotic schedule II controlled substance.

8. Your affiant has learned through training and experience that persons who sell drugs usually maintain business records and/or transaction notations of their illegal drug sales.

9. Your affiant(s) have learned through training and experience that the drug selling business is primarily a cash business and person(s) who sell controlled substances must maintain on-hand large amounts of U.S.C. in order to maintain and finance their ongoing business of illegal drug distribution.

10. Your affiant(s) have learned through training and experience that person(s) usually possess guns, and/or weapons to protect their drugs from the police and competition.

32-05-126537

11. Your affiant(s) are aware through training and experience that persons involved in illegal drug sales utilize electronic communication devices such as beepers and cellular phones to facilitate their business.

11. Your affiant(s) have learned through training and experience that person(s) who sell controlled substances often possess drug paraphernalia such as but not limited to packaging materials and scales.

12. Your affiant(s) pray that a search warrant be issued for the residence art 3 Butternut Ct, apt d, Claymont De 19703 and all curtilage therein so that any evidence contained therein can be seized.
***********************************************************************