IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 06-008-SLR |
| RICHARD D. REID, | : |
| Defendant. | : |

**OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE**

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby opposes the Defendant's Motion to Exclude Fingerprint Evidence (hereinafter, the "Motion" or "Def.'s Mot."), as follows:

The Government performed fingerprint analysis in this case. The result of that analysis was the discovery of the two fingerprints – partial latent fingerprints matching the Defendant's, which were recovered from a ceramic plate holding approximately 100 grams of cocaine base (hereinafter, "crack") seized by the police during a search of the subject premises – the Defendant wishes to exclude. Consideration of the relevant factors, including the lack of undue prejudice to the Defendant and the absence of bad faith on the part of the Government, indicates that the evidence should not be excluded.

As described in greater detail infra, assuming a discovery violation, which the Government does not concede, this Court's analysis of the Defendant's Motion is governed by Rule 16 of the Federal Rules of Criminal Procedure, which provides, in relevant part, that the Court may enter any order "that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(D).

Excluding the fingerprint evidence works an injustice where, as here, it places the Government in a worse position than it was in prior to the discovery of the fingerprints. Unlike the exclusion of most physical evidence – say, for example, drugs found pursuant to a defective search warrant – excluding the fingerprint evidence at issue here effectively precludes the Government from offering any evidence at trial regarding the procedure and testing that resulted in finding the latent fingerprints matching the Defendant's. The Government's witnesses cannot provide false testimony to the jury and state that they found no matching prints. Nor could they testify about the procedure they followed and simply stop short of describing the results of their analysis, as doing so clearly would invite unfounded and inappropriate jury speculation about what fingerprint evidence, if any, they found. Granting the Defendant's Motion to exclude the actual latent fingerprint evidence recovered in this case, therefore, would enable the Defendant to argue to the jury that such inculpatory evidence was not introduced at trial, with the logical inference by the jury being that it must, therefore, not have been found by the Government, while effectively precluding the Government from rebutting this argument.[1] This scenario does not at

---

[1] In his Motion, the Defendant phrases his request as for the entry of an order "precluding the government from introducing at trial <u>any fingerprint evidence</u>." Def.'s Mot. 5 (emphasis supplied). However, the proposed Order filed by the Defendant as an attachment to his Motion would prohibit the Government from "introducing at trial any evidence or testimony relating to <u>the latent fingerprints recovered in this case</u>," Def.'s Proposed Order (emphasis supplied), a more narrowly drawn exclusion. On its face, therefore, the Defendant's proposed Order presents a "have your cake and eat it, too" scenario, whereby the Government would be prohibited from introducing evidence showing that the Defendant's fingerprints were found on the plate holding the crack, while simultaneously permitting the Defendant to argue to the jury regarding the absence of such inculpatory evidence. This is clearly an unjust scenario. Accordingly, should the Court determine to grant the Defendant's Motion, the Government requests that both parties be precluded from making reference to any fingerprint evidence whatsoever, including by introducing physical or testimonial evidence regarding fingerprints and also by noting the absence of such evidence in the course of examining witnesses or arguing to the jury.

all comport with the truth-seeking nature and purpose of federal criminal trials, and is manifestly unjust.

### A. Analytical Framework under Fed. R. Crim. P. 16

Rule 16 of the Federal Rules of Criminal Procedure governs the parties' discovery obligations in the present action, and therefore guides the analysis of the Defendant's Motion.[2] Among other matters, Rule 16 sets forth the Government's obligation to disclose the nature and substance of any expert witness testimony it plans to adduce, Fed. R. Crim. P. 16(a)(1)(G) – for example, the fingerprint identification at issue here; the parties' continuing disclosure obligation, pursuant to which they must "promptly disclose" any additional evidence or material discovered prior to or during trial, Fed. R. Crim. P. 16(c); and the available remedies for discovery violations. Fed. R. Crim. P. 16(d)(2). When a party fails to comply with its discovery obligations, as the Defendant alleges the Government has in the present action, the Court may:

> (A) order that party to permit discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> (B) grant a continuance;
> (C) prohibit that party from introducing the undisclosed evidence; or
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2).

---

[2] In support of his argument, the sole case cited by the Defendant is a Third Circuit decision in the Three Mile Island class action litigation, see Def.'s Mot. at 4 (citing In re TMI Litigation, 193 F.3d 613, 721 (3d Cir. 1999), wherein the Court addressed the exclusion of expert witness evidence as a discovery sanction under Federal Rule of Civil Procedure 37. The Defendant's reliance on the case is misplaced, as analysis of the present action is under the Federal Rules of Criminal Procedure, specifically, Rule 16. See, e.g., United States v. Lopez, 271 F.3d 472, 483 (3d Cir. 2001) (in considering argument regarding late disclosure by the prosecution of expert witness evidence, stating "[w]e will assume, without deciding, that . . . the government violated the requirements of Rule 16(a). Accordingly, we must look to Rule 16(d)(2), which addresses the situation in which a party fails to comply with a discovery request.").

To determine whether a discovery violation by the Government warrants a sanction and, if so, what the appropriate sanction might be, appellate courts have set forth the following factors to guide district courts in their consideration:

> (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

United States v. Wickers, 848 F.2d 1059, 1060 (10th Cir. 1988); see also, e.g., United States v. Hastings, 126 F.3d 310, 317 (4th Cir. 1997); United States v. Williams, 902 F.2d 675, 677 (8th Cir. 1990).[3]

A district court's selection of the appropriate sanction for a Rule 16 violation is reviewed for abuse of discretion. Gov't of the Virgin Islands v. Fahie, 419 F.3d 249, 258 (3d Cir. 2005). In the Rule 16 context, a defendant is prejudiced, so as to warrant reversal for abuse of discretion, "only when he is unduly surprised and lacks an adequate opportunity to prepare a defense." United States v. De La Rosa, 196 F.3d 712, 716 (7th Cir. 1999) (emphasis supplied). In a recent, albeit unpublished, decision, the Third Circuit noted that "[a] trial court should, however, 'impose the least severe sanction that will accomplish prompt and full compliance with the discovery order.'" Jacobs v. Gov't of Virgin Islands, 53 Fed. Appx. 651, 652-53 (3d Cir. 2002) (citing United States v. Ivy, 83 F.3d 1266, 1280 (10th Cir. 1996)). A fellow Circuit Court

---

[3] In a recent decision, Gov't of the Virgin Islands v. Fahie, 419 F.3d 249, 259 (3d Cir. 2005), the Third Circuit had occasion to comment on the three factors set forth in Wickers. The Third Circuit endorsed the "importance" of the factors, but, with respect to the appellate issue at hand in Fahie – whether dismissal of the indictment was an appropriate sanction for a discovery violation by the government – concluded that to "merit the ultimate sanction of dismissal, a discovery violation in the criminal context must meet the two requirements of prejudice and willful misconduct." Id. In the present context, however, where the issue is exclusion of evidence, not dismissal of the case, analysis based upon the factors set forth in Wickers remains appropriate.

has observed with respect to late disclosure of evidence by the government that "[i]t would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." United States. v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002).

### B. Application of Rule 16 Factors to the Present Action

Considering the present action under this framework demonstrates that the fingerprint evidence should not be excluded and the Defendant's Motion should be denied. First, the government did not act in bad faith, as the Defendant concedes, Def.'s Mot. at 4, and produced the inculpatory fingerprint evidence as soon as it was received.[4] Second, and most importantly, the Defendant has not suffered significant prejudice on account of the timing of the disclosure of the evidence. In support of his undue prejudice argument, the Defendant offers two arguments: first, that his theory of defense and trial strategy was based, at least in part, on the fact that no fingerprint evidence linked the Defendant to the apartment where the police found the drugs, firearms, and drug-trafficking paraphernalia at issue; and second, that to "effectively defend against" and "properly challenge" the inculpatory fingerprint evidence, he would have "conducted certain [unnamed] investigation that time does not now permit." Def.'s Mot. 3. Neither argument is availing.

---

[4] The Defendant alleges that there was a five-day delay between when the fingerprint match was made by the government's fingerprint expert and when this information was shared with the government's attorney. Def.'s Mot. 3 n.3. Although language in the fingerprint expert's report may have resulted in some confusion on this point, upon information and belief, the actual chronology is as follows: (1) on February 2, 2007, the government's fingerprint expert sua sponte commenced a re-examination of the partial latent fingerprints recovered from the ceramic plate; (2) the government's expert performed a multi-step analysis of the fingerprints, which took numerous hours, continued over several days, and included, as part of the standard fingerprint identification protocol, having his findings verified by another fingerprint expert; and (3) upon completing his analysis on Wednesday, February 7, 2007, the government's expert promptly notified counsel of his findings, who immediately forwarded this information to the Defendant's counsel.

As to the Defendant's first contention, while it is the case that no fingerprint evidence previously linked the Defendant to the apartment, there was already extensive physical evidence, and potential testimonial evidence, connecting him to the apartment and the illicit items recovered therein. At the time he was stopped by the police, the Defendant had two glassine bags, one pink and one orange, containing crack in his pants' pocket. Identical glassine bags, two pink and dozens of clear ones, were found in the bedroom near the plate with the crack. Also in the bedroom, the police found numerous items of mail addressed to, and identification in the name of, the Defendant and his various aliases. Furthermore, the Defendant had keys to the apartment in his pocket and the police observed multiple photographs of the Defendant in the apartment. Finally, as the Government has informed the Defendant, among its expected witnesses is a civilian witness who, if asked, it is anticipated would testify that, at the Defendant's request, he rented the apartment, using his name, for the Defendant and his family. Certainly the fingerprint evidence adds to the weight of the already extant physical, and potential testimonial, evidence tying the Defendant to the apartment, but is not so different in kind as to require a fundamental change in trial strategy.

Regarding the second point, the Defendant does not specify the "certain investigation" he needs to conduct regarding the new fingerprint evidence. Although his Motion is notably silent on this point, the Defendant has already had his independent forensic expert examine the latent fingerprints at issue and compare them to inked samples of the Defendant's prints – an examination that occurred <u>after</u> the Defendant was informed of the fingerprint match. Prior to the match, the Defendant had arranged for his expert to examine the physical evidence on Friday, February 9, 2007. On that date, the Defendant's expert and his counsel spent several hours

examining the physical evidence, including the partial latent fingerprints recovered from the plate and certified copies of the Defendant's inked fingerprints, which the Government provided to the Defendant's expert for purposes of comparison. The evidence, and appropriate facilities in which to examine it, were at the disposal of the Defendant's expert and counsel for as long as they desired.

The Defendant has not requested any additional opportunity to examine the evidence, and has provided no information regarding what additional investigation he needs to perform. That the newly discovered evidence is detrimental to the Defendant's case does not, in and of itself, constitute undue prejudice warranting its exclusion.[5]

Finally, as to the third Rule 16 factor, any prejudice to the Defendant resulting from the timing of the disclose could be cured with a short continuance, during which the Defendant could conduct the unspecified "investigation"[6] he contends he has not had the time the perform. Def.'s Mot. 3. The Defendant acknowledges that "a postponement of trial may be an option for curing any prejudice" to him, Def.'s Mot. 4, but indicates that he does not desire a continuance. Nevertheless, the Court, in its discretion, may grant a continuance. Given the circumstances of

---

[5] In his Motion, the Defendant refers to the "alleged fingerprint match." Def.'s Mot. 3. Given that the Defendant waited until after his own forensic expert compared the fingerprints at issue to known samples of the Defendant's fingerprints to file the instant motion, it is reasonable to surmise that his expert agrees with the determination of the Government expert that the fingerprints are the Defendant's.

[6] As noted in the main text, the Defendant's independent fingerprint examiner has already reviewed the latent fingerprints at issue and compared them to certified samples of the Defendant's fingerprints, and has also examined all of the other physical evidence in the case (e.g., the firearms, ammunition, drug-trafficking paraphernalia, etc.) that was tested for fingerprints.

the case, including the lack of bad faith on the part of the Government, a continuance is a more appropriate remedy than excluding the evidence entirely.

A recent Seventh Circuit case, United States v. Stevens, 380 F.3d 1021 (7th Cir. 2004), addressed a factual scenario similar to the one presented here and, therefore, is instructive in the analysis. The defendant in Stevens faced various narcotics and firearms charges after the police found drugs, drug-trafficking paraphernalia, and firearms in the defendant's bedroom while executing a lawful search warrant for his home. Id. at 1023. Among other items, the police found a postage scale that appeared to have crack residue on it, which they thereafter submitted for fingerprint analysis. Id. at 1024. Ten days before trial, the government's forensic scientist completed his report regarding analysis of the two fingerprints found on the scale, which he determined matched the defendant's. Id. The forensic expert immediately forwarded his report to the government, which disclosed it to the defendant that same day and also informed the defendant that it would call the forensic scientist as an expert witness at trial. Id. The defendant moved in limine to exclude the expert's testimony on the grounds that the government had violated Rule 16 by disclosing the expert report the week before trial. Id. The district court denied the motion on the basis that the government had disclosed the report the same day it received it. Id.

On appeal, the defendant argued that the government, which had possession of the scale in the interim between the search and the start of trial, a three-month period, should have performed more timely fingerprint analysis, and that "he was prejudiced by the government's late disclosure because he did not have time to obtain an independent fingerprint expert to verify the accuracy" of the government expert's findings. Id. at 1025. The Seventh Circuit rejected the

argument, finding no abuse of discretion in the denial of the motion to exclude. Id. at 1026. The appellate court first noted its agreement with the finding by the district court that the government had not violated Rule 16 "because it turned over the expert report as soon as it learned the report existed," id. at 1025, as is true in the case at bar.

The Seventh Circuit went on to state that "even if the government had violated Rule 16, the appropriate remedy was not necessarily the exclusion of the evidence." Id. at 1026. Because the defendant in Stevens did not request a continuance, or any other remedy aside from exclusion of the late-disclosed evidence, the Seventh Circuit rejected his argument that he was prejudiced by not having "time to obtain an independent fingerprint expert to verify the accuracy of the government's witness." Id. The appellate court also noted that the defendant "was not prejudiced because his counsel was able to thoroughly cross-examine [the government's expert] at trial." Id.

The same reasoning applies here where the evidence was turned over as soon as it was received, there was no bad faith on the part of the Government with respect to the timing of the fingerprint identification, and, unlike the defendant in Stevens, the Defendant has had time to have his independent forensic expert examine the latent fingerprints at issue in order to verify the determination by the Government's expert that they match the Defendant's. Accordingly, the Defendant will suffer no undue prejudice due to the admission of the fingerprint evidence.

//////

**WHEREFORE**, the United States requests that the Court deny the Defendant's Motion to Exclude Fingerprint Evidence.

>Respectfully submitted.
>
>COLM F. CONNOLLY
>UNITED STATES ATTORNEY
>
>BY: ___/s/_____
>Sophie E. Bryan
>Assistant United States Attorney

Dated: February 12, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 06-008-SLR |
| RICHARD D. REID, | : |
| Defendant. | : |

**CERTIFICATE OF SERVICE**

I, Sophie E. Bryan, Assistant United States Attorney for the District of Delaware, hereby certify that on the 12th of February 2007, I caused to be filed electronically an Opposition to Defendant's Motion to Exclude Fingerprint Evidence with the Clerk of the Court using CM/ECF, which will be available for public viewing and downloading. I further certify that a copy of the foregoing pleading was served electronically on counsel of record as follows:

Eleni Kousoulis, Esquire
Federal Public Defender's Office
704 King Street, Suite 110
Wilmington, DE 19801

/s/
Sophie E. Bryan
Assistant United States Attorney
United States Attorney's Office
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
sophie.bryan@usdoj.gov