IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 06-008-SLR |
| | ) |
| RICHARD D. REID, | ) |
| | ) |
| Defendant. | ) |

Colm F. Connolly, United States Attorney and Shannon Thee Hanson, Assistant United States Attorney, United States Attorney's Office, Wilmington, Delaware. Counsel for Plaintiff.

Eleni Kousoulis, Assistant Federal Public Defender, Federal Public Defender's Office, Wilmington, Delaware. Counsel for Defendant.

**OPINION**

Dated: May 30, 2007
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I. INTRODUCTION

Defendant Richard D. Reid, a/k/a Abdul H. Shabazz, a/k/a Hakeem A. Shabazz,[1] was charged by superceding indictment in January 2007 with five counts of being a felon in possession of firearms (Counts I and II) and of ammunition (Counts III, IV and V). He was also charged in the superceding indictment with one count of possession with the intent to distribute more than fifty grams of a mixture and substance containing a detectable amount of cocaine base ("crack")(Count VIII), two counts of possession of a firearm in furtherance of the drug trafficking crime charged in Count VIII (Counts VI and VII), one count of possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine (Count IX), one count of possession of crack cocaine (Count X), and one count of possession of marihuana (Count XI). (D.I. 31) Defendant knowingly and intelligently waived his right to a trial by jury; a two-day bench trial was conducted on the above charges. Pursuant to Fed. R. Crim. P. 23(c), the court's findings of fact are set forth below.

## II. FINDINGS OF FACT

Based on the evidence of record, the court finds as follows:

---

[1]The parties stipulated to the following facts regarding defendant's name:

    1. The defendant's given name at birth was Richard D. Reid.
    2. In the early 1980's, the defendant's mother re-married and the defendant took his step-father's surname, changing his name from Richard D. Reid to Hakeem Abdul Shabazz.
    3. Since that time, the defendant has used both names.

(GX 34)

1. On May 1, 2005, Lawrence Jones of Farrockaway, New York, traveled to Delaware to complete an application to lease "ASAP" a two bedroom apartment in Wilmington, Delaware. (DX 3) Mr. Jones was employed at the time with the "Unified Court System" in Kew Gardens, New York, and lived with his parents. (Id.) On or about July 15, 2005, Mr. Jones once again traveled to Delaware to execute an "Apartment Lease Agreement" for 3D Butternut Court, 2601 Carpenter Road, Wilmington, Delaware 19810 ("the Apartment"). The term of the lease was from August 1, 2005 through July 31, 2006. The monthly rent was $730, with the tenant being responsible for gas heat and electric. (GX 25; DX 4)

2. Mr. Jones testified at trial that he never intended to live, nor did he ever actually live, in the Apartment he leased at 3D Butternut Court. He never used his own money to pay the rent or utilities. Mr. Jones rented the Apartment in his name as a favor for defendant, a friend "[f]rom the old neighborhood" in New York. According to Mr. Jones, he was asked by defendant to rent the Apartment because defendant had bad credit and wanted his son to go to a better school in a better school district. Mr. Jones gave the keys to the Apartment to defendant. (D.I. 55 at 102-107)

3. On the morning of October 5, 2005, pursuant to a search warrant for the person and vehicle of defendant, Detectives Matthew Tower and Michael J. Iglio, of the New Castle County Police Narcotics Unit, set up surveillance of defendant's vehicle in the area of the Apartment. (GX 1) Within an hour, defendant was seen leaving the apartment building, 3 Butternut Court. As defendant started to enter his vehicle, the detectives identified themselves as law enforcement officers. Defendant then was removed from his vehicle, handcuffed, placed in the patrol car, and asked if he had any

drugs, weapons, or contraband on his person. Defendant informed the detectives that he had some cocaine on his person to get high. Detective Tower checked defendant's pocket and found two small glassine baggies which, according to Detective Tower's training and experience, had the appearance of crack cocaine. (GX 2) Defendant then was read his Miranda rights. In response to subsequent questioning, defendant stated that he was coming from apartment 3-E; the keys in his possession, however, were for the Apartment, 3-D. (D.I. 54 at 3-4, 12-20; D.I. 55 at 3-6)

4. Detective Iglio proceeded to the Apartment, joined by other New Castle County Police Officers. Detective Iglio knocked on the door and announced the presence of the police. Although Detective Iglio heard noise inside the Apartment, there was no response to his knocking on the door. He ultimately used defendant's keys to enter the Apartment; the officers then conducted a protective sweep, looking for any other occupants of the Apartment. During the protective sweep, Detective Iglio observed that the television in the master bedroom was on; he also observed a plate holding a white rock-like substance under the bed. (D.I. 55 at 4-10; GX 15)

5. A search warrant for the Apartment was executed later that day. The officers recovered from the master bedroom: (a) From under the bed, a plate with crack cocaine (D.I. 55 at 8-12; GX 16, 17); a .45 caliber cartridge found in a shoebox (D.I. 54 at 31; GX 6); and the remains of marijuana cigarettes ("blunts") in an ash tray (D.I. 54 at 70-71; GX 19); (b) From the closet, a bag containing various loose cartridges, as well as one box of Remington 40 Smith & Wesson cartridges, two boxes of Winchester 40 Smith & Wesson cartridges, and a box of 9-millimeter cartridges (D.I. 54 at 33-34, 65-66; GX 8); and an unloaded Colt semiautomatic .25 caliber pistol, along with its

magazine and a holster, in a small drawstring bag (D.I. 54 at 35-37; GX 9-11); (c) From the night stand next to the bed, three glassine bags, each containing multiple small glassine baggies,[2] as well as "Philly blunt cigars"[3] and cigarette rolling papers (D.I. 54 at 75-76; GX 5, 21); (d) From the top of an armoire, a loaded (5 rounds) .32 caliber Rossi handgun (D.I. 54 at 29, 77-82; GX 22-24); (e) From the dresser, two glassine bags with marijuana. (D.I. 54 at 72-75; GX 20) Also recovered from the master bedroom were various documents. (D.I. 54 at 32-33; D.I. 55 at 13; GX 7, 18)[4] From the kitchen, on top of the cabinets located above the sink, the officers recovered a scale and a small amount of powder cocaine in a black plastic bag. (D.I. 54 at 38-40; GX 12-13) The officers also observed photographs of defendant in the living room and what appeared to be the belongings of a teenager in the second bedroom. Aside from a pair of jeans,

---

[2] Small zip-lock glassine baggies are commonly used to package small amounts of crack cocaine, powder cocaine, and pills. (D.I. 54 at 75-76)

[3] "Philly blunt cigars" are known to be used as a preferred method to wrap marijuana cigarettes; the cigars are cut open and the tobacco is removed and replaced with marijuana. (D.I. 54 at 75)

[4] The documents include several bills from Delmarva Power for the Apartment, directed either to Mr. Jones or to Janice Richardson (defendant's girlfriend), whose prior address was noted as being "39 Jill Court, Wilmington DE 19809." Of the remaining documents, those directed to Ms. Richardson include a letter having the "39 Jill Court" address and automobile and automobile insurance bills having the 3D Butternut Road address. With respect to defendant, there is a "Notice of Suspension" directed to him at the Apartment from the Brandywine School District relating to his son, as well as defendant's monthly Nextel bill addressed to defendant at "39 Jill Court." (GX 18) Also found in the master bedroom was a checkbook (never used) endorsed with the following name and address, "Hakeem Shabazz, 39 Jill Court, Wilmington, Delaware," as well as two business cards with the words "Shabazz" and "Lil Shabazz Entertainment, Inc." written on them. (GX 7) Finally, several Delaware licenses and social security cards issued to defendant, using his various names and various addresses, were found either on his person or in the Apartment. (D.I. 54 at 42-43, 65; GX 14)

there were no articles of clothing or toiletries that appeared to belong to an adult male. (D.I. 54 at 83-84; D.I. 55 at 9-10, 25-26)

6.  The substances found in defendant's pocket (GX 2), in the master bedroom (GX 16, 19, 20), and in the kitchen (GX 12) were examined by a chemist from Delaware Health and Social Services, Office of Chief Medical Examiner, Forensic Sciences Laboratory, with positive results. The weight of the substance identified as crack cocaine in GX 16 was 94.27 grams. (D.I. 55 at 116-130 ; GX 35)

7.  The objects recovered, e.g., drugs, a scale, glassine baggies, and firearms, are characteristic of a drug distribution operation. (D.I. 55 at 147-161)

8.  Various of the objects secured in the search warrant were tested for fingerprints. The only prints with latent value were partial impressions of a left thumb recovered from the rim of the plate found under the bed in the master bedroom; the prints were identified through expert testimony as belonging to defendant. (D.I. 55 at 54-67, 89-93; GX 26, 30, 31)

9.  The parties stipulated to the fact that, "on or about February 13, 1977, the defendant was convicted, under the name Hakeem A. Shabazz, of a crime punishable by a term of imprisonment exceeding one year, in the Supreme Court for the State of New York, in and for Queens County." (GX 33)

10. The firearms and ammunition recovered (GX 8, 9, 22) all traveled in interstate commerce. (D.I. 54 at 96-104)

### III. Standard of Review

5

1. There was no evidence of actual possession of the contraband identified above; as a result, the issue becomes whether there was evidence sufficient to establish constructive possession.

2. A finding of guilt based on constructive possession requires a record demonstrating that the defendant had "both 'dominion and control' over an object and knowledge of that object's existence." United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993) (quoting United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992)); United States v. Bobb, 471 F.3d 491, 497 (3d Cir. 2006). The type of evidence that can establish dominion and control includes "evidence that the defendant attempted to hide or to destroy the contraband, or that the defendant lied to police about his identity or the source of large amounts of cash on his person." United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996) (citations omitted).

3. In United States v. Brown, 3 F.3d at 681, the Third Circuit concluded there was insufficient evidence to establish that the defendant constructively possessed drugs found in her home because the record did not demonstrate that she had dominion and control over the drugs. The court noted that, although defendant was aware that large quantities of drugs were stored, cut and packaged for sale in her house, her fingerprints were not found on any of the drugs or drug paraphernalia and her clothing and switchblade were located in a room where drugs were not found. A co-defendant's fingerprints, however, were found on the drugs and drug paraphernalia.

4. Proximity alone, without some proof of dominion and control over the drugs, is not enough to demonstrate constructive possession. United States v. Jenkins, 90 F.3d at 818. In Jenkins, the court overturned defendant's conviction for drug possession and

6

firearm charges because the evidence showed only that defendant was present in an acquaintance's apartment, physically near, but not in actual possession of, drugs and drug distribution paraphernalia. There was also no evidence that defendant was working with the drugs; his fingerprints were not found on the drugs or paraphernalia and no drug residue was found on defendant. Significantly, the court noted that the defendant made no attempt to hide or destroy the drugs and was cooperative with law enforcement. Id. at 819-820.

## IV. CONCLUSION

Based upon the findings of fact recited above, the court concludes that plaintiff has proven, beyond a reasonable doubt, that defendant had dominion and control over the contraband seized on October 5, 2005 from the Apartment. Therefore, defendant is adjudged guilty of Counts I through XI of the superceding indictment.